May please the court. The North Dakota Aggravated Assault Statute used to enhance Schneider's base offense level does not count as a crime of violence because it encompasses reckless driving resulting in injury. Under the force clause, a statute that encompasses reckless driving resulting in injury does not qualify for enhancement. We know this from the Osana Field's Boose and Don cases, which all discuss assault or battery statutes that can be committed by reckless driving. Under subsection 1 of North Dakota's Aggravated Assault Statute, a person can be convicted based on reckless driving that results in serious bodily injury. Subsection 1 states a person is guilty if they willfully cause serious bodily injury to another human being. Willfully is a mens rea element of the statute. In a separate section of the statute, willfully is defined as engaging in conduct intentionally, knowingly or recklessly. Intentionally, knowingly or recklessly are alternative means to the willful mens rea element. Our burden then is to show a realistic probability, not a theoretical possibility, that the North Dakota Aggravated Assault Statute is being applied to conduct outside the force clause. We saw this in the State v. Selzley case where the victim's finger is injured while holding onto the car's door handle while the defendant reverses the vehicle. The defendant was charged with willfully committing serious bodily injury. The jury did not need to unanimously decide on which of the alternative means, intentionally, knowingly or recklessly, sustained Selzley's conviction. The prosecutor recognized this and stated, quote, the highest level of culpability the motive is reckless. Is it a problem that this wasn't initially in the record that we're learning about this on appeal, this particular prosecution you're talking about? It isn't a problem, Your Honor. The court has two ways of accepting these documents into the record. The first is through federal Rule 27 and local Rule 27A, which is the court's discretion to accept these documents. The court can also accept these documents by taking judicial notice under Rule 201. And this is important. We're not re-arguing the issues in the State case. We're just submitting these records to show that they exist, which is important because our hurdle is to show a realistic probability, not a theoretical possibility, that North Dakota is applying this statute outside of the force clause. And this case demonstrates that. And so all of these documents that you've proposed are in the public record? Yes. So, also at closing, the prosecutor stated, quote, again, Ben wasn't scared. He was drunk. He was upset. He wanted to hurt Shannon. He was, at the very minimum, reckless about that. Reckless about the consequences of the choices that he made, close quote. So this case demonstrates that North Dakota- You're saying we can look at the facts of that other case, even though we can't look at the facts of your case, huh? No. What I'm saying- Sound like that's just what you were doing. Yeah. Let me clarify. So, from the documents that we submitted to the record, it shows we've submitted the charging documents, the jury instructions, the excerpts from the transcript, the judgment, and the verdict. And they state that the lowest mens rea that needed to sustain the aggravated assault conviction was reckless mens rea. And so, the aggravated assault conviction was sustained based on reckless driving that resulted in serious bodily injury. And so, and that's what we need to show for this to be a realistic probability and not a theoretical possibility. We also have, in addition to the Selzley case, we also have an analogous North Dakota statute, the manslaughter statute, which also demonstrates that- Well, the manslaughter statute is an element-by-element analog to North Dakota's aggravated assault statute. And the manslaughter statute can be committed by reckless driving that results in death. So, the manslaughter statute requires that the defendant acted recklessly, and that caused the death of another human being. And then we have the North Dakota aggravated assault statute, which requires willful conduct that causes serious bodily injury to another human being. So, the manslaughter case that we have is the Anderson case, where the defendant was driving drunk on the wrong side of the road and kills another human being. And so, if reckless driving that causes the death of another human being is manslaughter in North Dakota, then reckless driving that causes serious bodily injury to another person but falls short of killing them must be aggravated assault under the statute. That's an interesting argument, but you still don't have- I mean, that's your theory of how it would be applied? Yes. So, we do have the realistic probability. That shows that it's a realistic probability that they would apply the statute to North Dakota- that they would apply the North Dakota aggravated assault statute to this type of conduct. But we do have the Selzley case, which demonstrates that that is how the statute is being applied. It is sort of a novel way of looking at realistic probability to look at one statute and comparing it to another, and how sort of almost a lesser included type concept. Are there any other circuits or district courts that are doing that type of analysis for purposes of the realistic probability? I don't know, Judge Kelly. But again, we also do have the Selzley case, which if you want to get beyond the statute by statute comparison, we also have the Selzley case, which demonstrates that the courts in North Dakota are actually applying the statute to conduct that falls outside of the force clause. Someone always asks this at the inbanks, so I'll beat Judge Strost to asking the question, which is simply, by the time we're done with all this exercise, haven't we really repealed the Armed Criminal Career Act? Because every statute that we get before us, we've had state after state, who are the most common and simple of crimes. We find something, we find some cases, and sure enough, you got my point, I'll shut up. So what's the answer? Well, I will say along the force clause that there's the Fogg case, there's been cases afterwards that demonstrate that there's still offenses that qualify under the ACCA and also under the guidelines. We're under the guidelines here. So this area of law, while it's fast moving and it's changing, it is narrowing, and so there are cases where this still qualifies. And we're arguing specifically under the specific line of cases, it's really this niche area with the Osana, Fields, Don, and Booth cases of reckless driving resulting in injury that we're really arguing here. And so we have that, again, with the Selzley case and with the statute by statute comparison, we think that that supports it as well. Well, to press Judge Benton's point, isn't this case a good example of precisely what Judge Benton was saying? Here we have the prior offense being aggravated assault. He pushes the woman down on the bed, inserts his finger into her mouth, and then later jumps on the hood of the car, kicks the windshield out, and takes the child. That seems to me to involve violent force. So aren't we really almost reading out the violent force or the Armed Career Criminal Act here? You know, what I will say is that this isn't a factual-based analysis. This is a statute-based analysis. So when we look at the elements of the statute, we know from the willful mens rea element that the statute is overbroad and indivisible. So we can't even proceed to the modified categorical approach and see what Mr. Schneider did in the offense. But even if we did proceed to the modified categorical approach, which again, we argue does not apply, if we did, when we look at Schneider's charging documents, we only see that he committed the offense willfully. Again, it doesn't specify intentionally, knowingly, or recklessly. So that mens rea element is never conclusively decided. So under any approach, we're not allowed to look at the facts. Garcia, Longoria, are you familiar with that case? Yes. Okay. Why doesn't it support what Judge Strass just said? Well, Garcia-Longoria is a pre-Mathis case, and the divisibility analysis is inconsistent with Mathis. And so in Garcia-Longoria, there was a Supreme Court case from the Nebraska Supreme Court that addressed the divisibility issue. We don't have that in North Dakota. There is no state case that addresses the divisibility issue, so that question is open for us. So because they had a Supreme Court case that addressed the divisibility issue, they were allowed to proceed to the modified categorical approach. And again, we aren't. And that's because the willful mens rea element is overbrought and indivisible. Modified categorical approach doesn't apply. But even if we did- This will vary greatly by state, because some of our states, Missouri, Minnesota, have a lot of reported cases. Yes. Go back a long time, 200 years. And two levels of courts, you get my point. And North Dakota just doesn't have a lot of reported cases. One Supreme Court, one appellate court in the state. So does that affect our analysis? It doesn't. We don't have to have a reported case here to prove that the statute is being applied, that there's a realistic probability that the statute is being applied outside of the force clause. So to switch to the enumerated offense clause, the generic definition of aggravated assault requires assault plus one of the aggravating factors. Specifically the aggravating factor here is the intent to cause serious bodily injury. So North Dakota's aggravated assault statute is overbrought in comparison, because North Dakota aggravated assault doesn't require the intent to cause bodily injury. It only requires willful conduct to do some type of conduct that results in bodily injury. Isn't this issue subject to a circuit split? We've got the, on the generic definition, we've got the, what is it, the Fifth Circuit's decision in Mungia Portillo, which suggests that recklessness is alone sufficient, that you don't actually need intent. Well, we have a Fifth Circuit and Sixth Circuit and Ninth Circuit cases that say for a specific intent crime, that you do need intent. And here, in the Chapman case, the Eighth Circuit adopted, it didn't adopt the Fifth Circuit's definition of intent to cause bodily injury. It adopted the Ninth Circuit's definition in Gomez versus Hernandez, which cited the Eleventh Circuit case, Palomino versus Garcia, which added the intent to cause bodily injury. So that's the case that the Eighth Circuit has adopted that definition. And North Dakota's aggravated assault statute falls outside of that definition, because, like I said, the injury is a byproduct in North Dakota. It's not the goal, it's not the purpose, as is the case in the generic definition. And we saw that with the Selsey case, where the defendant reversed the vehicle, the victim's trying to open the door, victim's finger's injured. So, in the very least, the generic definition requires intentional conduct, whereas North Dakota's aggravated assault statute doesn't necessarily require intentional conduct. Now, before you, I don't want to eat into your rebuttal, but we did a review, and of the 50 states, 16 states on aggravated assault require only recklessness. It does not require intent. So there are a number of states who define aggravated assault as only involving recklessness. Why shouldn't we take that into account in determining whether or not it meets the generic definition? Well, again, there's the intent to cause bodily injury. I don't know what the states say about that intent to cause bodily injury, but we know North Dakota's aggravated assault statute does not require that extra element. It's just willful conduct that results in serious bodily injury. So that is still an element that's missing in that definition. Thank you, Counsel. Yep. Mr. Rodenbiker. May it please the court, counsel. Good morning, your honors. My name is Jake Rodenbiker, and I'm appearing before you on behalf of the United States this morning to respectfully request that you affirm the district court's finding that the base offense level for Leland Schneider was a 20, not a 14, because his prior aggravated assault conviction under North Dakota law is a crime of violence under the sentencing guidelines. We can get there, I think the court can get there, in three different ways. Two of which fall under the elements clause, and one of which is under the enumerated clause. I think the preference has been to go in order of how they appear in the guidelines, and so let me proceed that way too. The categorical approach, which I believe the statute falls within, it is not over broad in that sense. And I come before you sort of like the rabbit, as it were, leading the court down the rabbit hole, as I think your colleague, the Chief Judge of the 11th Circuit has put it. And in a unique way, because I was the prosecutor on the Selsley case that is referenced, that is why I was familiar with it, probably the only reason why it is before the court, because it appeared in a footnote due to my familiarity, and so I may be uniquely familiar with it. Shouldn't the state have to at least tell us which clause it's under? I don't know whether it's under subsection one or subsection three. Most states have a procedure where you can tell which section of the statute it's under. I do agree, Judge Benton, that the Schneider charging document was not very clear as far as that goes. I do think that the charging language, if you look at the information that was filed, or I believe it's titled the complaint in his case, the better argument you can make as far as which section he was convicted under is subsection three. And that's because the specific facts alleged about the injury are more in line with bodily injury while attempting to cause serious bodily injury. And while I'm on that point, I think subsection three is a specific intentionally subdivision of the North Dakota aggravated assault statute in that you can only be guilty of subsection three if you are attempting serious bodily injury, attempt, of course, signaling a specific intent to achieve the serious bodily injury, which takes it sort of beyond the recklessness realm that it would otherwise fall in. With respect to Selsley, I can tell the court that it was charged specifically under subsection one. And I think if the court had the entirety of the Selsley record in front of it, rather than just the 20 or so pages that Schneider has asked the court to consider. If the court looked at all 400 plus pages of the record, including the trial exhibits, which, Judge Kelly, I believe all of that is of public record. So if the court wanted to take notice of that, I believe this court could do that. But I think that court would find that it's not, in fact, the reversal causing a broken thumb that is the aggravated assault. What, in fact, in Selsley was the aggravated assault was after he reversed his car and broke the thumb of his sometime friend, Shannon Miles, Shannon Miles started running away in the parking lot of this bar. And what happened then is Ben Selsley drives after Shannon Miles through this parking lot and runs him over, basically, causing a broken foot. I don't think that that's clear from the limited record that Schneider has asked this court to consider. But again, if the court looked at the whole case of Selsley, it would see that it's not the reversal causing the broken thumb that is the aggravated assault. That is the aggravated reckless driving. And the court will note that there were separate convictions for both offenses because there were separate actus reus, right? There were two different- I agree, we can go into the facts of the other case, it's just the facts of this case we can't look at. Yes, and that seems sort of bizarre, but I think that's what the precedent holds. And I think it's the crime that matters when looking at whether there's a realistic probability as opposed to just a theoretical possibility. I submit that we're still in the realm of theoretical possibility when it comes to what would be over broad for the categorical approach. And in fact, if anything, I would encourage this court to look at Selsley as a case that shows how North Dakota is not using the aggravated assault statute as a merely unadorned reckless driving substitute. And that is, again, because the conduct that Selsley engaged in was both aggravated reckless driving on the first act, and then it continued on in sort of a close sequence of events to become aggravated assault. They were both charged along with several other offenses. They were different conduct, and he was convicted of them. They were both charged. The documents we have, and maybe this is what you're referring to, we don't have enough, but there's amended criminal information with only one count. Are you saying that the jury considered more than one count against him? Yes, Judge Kelly. It sounds bizarre, and this was something that I found peculiar as well when I became the state's attorney in McKenzie County. But the practice was, at the time, that the citing officer, the arresting officer, could file citations of misdemeanor offenses in a case. And then anything that was a felony would have to be charged by the prosecutor, as it were. It would have to be filed with an information. And so that's how that case, again, if you were to look at the whole record, you would find that ultimately amended information. But you would also find several citations for misdemeanor offenses, including aggravated reckless driving, which under North Dakota law is a class A misdemeanor. So that was filed simply by a uniform traffic citation, but it served the purpose of a charging document. The instructions fully reflect that it was one of the counts that Mr. Selzley faced in the same trial. And again, looking at the entirety of the record, and I'm not sure if the court could get its hands on the surveillance videos from the bar in question. But it would clearly demonstrate that, which were admitted into evidence. But that would clearly demonstrate the sort of course of action that I'm talking about, where he's backing up. The victim's thumb is broken, the victim starts to run away. And he's chased down very deliberately, certainly an act of volition by Mr. Selzley. But it was charged under one, I mean, right? You said earlier it was charged under one. And as opposing counsel said, under that statute, it can be recklessness or intent. And the jury isn't required to decide between those two in convicting that particular defender and even charging the defendant. I agree, but I don't think, Judge Strauss, that that is mere reckless driving. I think if the court were to look at the entirety of that record, it would see that it is not sort of this needle in a haystack that shows North Dakota is using that statute as though it were just a substitute for reckless driving. But look at it from my perspective, which is that if you've already gone down the road of charging, let's say it was intentional in terms of looking at the facts, once you've gone down the road of using it to even go after somebody for intentional driving. If the statute itself allows reckless driving, it doesn't seem that fanciful, and that's the word the Supreme Court's used, and I think we use that in our Swoap's case. It doesn't seem that fanciful to extend it just a little bit further to recklessness. Am I wrong about that? It probably doesn't seem that fanciful, but I think the precedent has suggested that we don't want to use legal imagination. We want to use real world examples, and I think that Selzley falls short, Judge Strauss, in providing that real world example. Again, as I've submitted, I think it does the opposite. It shows a real world example where it could have been used for simply reckless driving, but it was not. It was used for what I think the court would find to be very intentional knowing conduct. I think Selzley also is a poorly suited case to look at for the realistic probability factor because the court never really touched on this. And I don't say that to say that this court could not decide that that was in fact what sustained the conviction. But the trial court was never challenged on whether or not it was simply reckless driving that sustained the conviction. And the trial court never had to answer that. And when the case was appealed by Selzley to the North Dakota Supreme Court, the only issue on appeal was whether the evidence was sufficient in light of his claimed self-defense. And so the opinion- You may be right that as a practical matter, the litigants aren't parsing out the levels of mens rea. But isn't, for right or wrong, it's what the statute says. And so I'm kind of struggling with how we can avoid looking at the statute. And so if the state takes the position through their statute that you can commit something with a series of, it's willful, it's reckless, a series of mens reas. It's kind of a choice that then you have to accept for when we're looking at the statute. As we've discussed, this is looking at the statute, not the underlying offense. So it may not be the ideal way to do it, but I'm struggling with how we avoid looking at how North Dakota has defined their statutes, and then we just have to accept that. I understand, Judge Kelly, and I appreciate the court's insight as to what the state prosecutor might have been thinking. Or frankly, what I was not thinking, certainly this question of whether aggravated assault was a crime of violence under the categorical approach was not even a gleam in my eye at the time I tried this case. But what this court, I think, has done with respect to asking the question of whether recklessness makes a statute overbroad, is to say reckless driving, unadorned, mere reckless driving. I think that's, if we dig into Osana and Fields, really what this court has looked for. Are we simply criminalizing that conduct? And not only are we doing that, but what's the example of it? I do agree that it's not too fanciful a stretch, and I appreciate counsel's arguments about the manslaughter statute, for example. And the aggravated assault being a sort of lesser included. But as I pointed out in my brief, we do have the aggravated reckless driving statute for reckless driving that causes injury. We don't have the concern that, say, the First Circuit expressed in looking at Bennett about Maine's statute, where you could be convicted for DUI, causing serious bodily injury or death. And I submit that we don't have that in North Dakota. And I'll confess this not in my brief, but there's a statute for driving under the influence resulting in serious bodily injury or death at North Dakota State. Are there times where we don't have to look at whether or not there's been a prior prosecution? In other words, are there times where the plain language of the statute, and this might be a variation of what Judge Kelly was saying, where we can just look at the plain language of the statute and say, you know what? This particular crime is encompassed within it. It's obvious it's encompassed within it. Maybe they can't point to any prosecutions that happen in North Dakota or whatever state it is, but it obviously is covered and therefore we've got a problem under the Armed Career Criminal Act. I suppose that one example comes to my mind is if the mens rea were negligence, for example. So there are some offenses in North Dakota that have a mens rea of negligence.  This court has said reckless and above, at least in fog, is sufficient for use of force and that's what we're looking at under the categorical approach. Moving on, if the court doesn't like the categorical approach and finds this is too broad, I think that we can see and the parties basically agree that the statute as a whole that we're talking about is divisible. And we disagree about whether the willfully aspect of the statute is divisible. But again, I think we can get past that by looking at Mr. Schneider's charging document, as Judge Benton, you asked about, and see that really what he was convicted of is the subdivision three, which does have that specific intent embodied in the while attempting serious bodily injury aspect. Finally, your honor, I also believe that we can find that the aggravated assault statute is an enumerated offense. And now I think that it hinges on what this court meant in Chapman when it said intent to cause serious bodily injury. Now I don't think that the common ordinary understanding of the word intent is equivalent to intentionally or purposely as I would sometimes consider it. I think that when you look at intent, what we're talking about is there needs to be sufficient mens rea to cause bodily injury or serious bodily injury. You can read the word any into Chapman, including any intent, A and Y. Yes, any intent that this court has found sufficient, which again would be recklessly. And so when we have- As long as it's not negligent intent. Correct, that would be below what this court has found and outside the realm of the enumerated offense of aggravated assault. So I do think that this court can read consistent with Chapman and that aggravated assault is an enumerated offense under the crime of violence definition and the sentencing guidelines. With that, your honors, and seeing no further questions, I appreciate the opportunity to come and argue before you today in this matter. We ask that you affirm, and I thank you for your consideration. Thank you, counsel. Justino. Thank you. I'm first going to start with the subsection one versus subsection three conversation. In the briefs, both parties agree that it's unclear from the charging documents whether Schneider was convicted under subsection one, subsection three. So to the extent that counsel's argument now says that it falls under subsection three, that wasn't the case in the briefing. And when it is inconclusive of what subsection it falls under, according to horse looking, you have to look at the least culpable conduct under either subsection, which is why this conversation really focuses on subsection one, which has to do with the willful conduct. And that ties back to the conversation that we were having where willful conduct is over broad and indivisible. I do also want to touch on the Selves-Lee case that was discussed. During the, first, we can submit and supplement the full record. We have no problem doing that. We offer that in our motions to supplement, and we're happy to submit a record in its entirety. But second, I think it's important to note that now the prosecutor is somehow saying that it required intentional conduct and something higher than reckless. But if we look to the quotes from the transcript, that wasn't the case at trial. The prosecutor stated that, quote, the highest level of culpability the state needs to prove is reckless, close quote. And then again, at closing, the prosecutor stated, again, Ben wasn't scared, he was drunk, he was upset, he wanted to hurt Shannon. What did the jury instruction say? The jury instruction said willful conduct. And- Did it define willful? And then it did, well, it defined willful in a- With all three? Yeah, but jury did not need to unanimously decide, again, whether it was. So the prosecutor recognized that at trial, that all he needed to sustain was reckless conduct. And so to now say that it's some sort of intentional conduct was required is a little self-serving at this point, at this stage of the game, where we know that aggravated assault can be sustained by reckless driving. Isn't he making a slightly different argument? You can correct me if I'm wrong on this, but I think he's making the argument that if you, we're looking at the prosecution and saying is it fanciful to charge reckless driving? He's saying, even if he wasn't convicted of intentional conduct, because the jury didn't have to decide that, there's no question in that case that the actions were intentional. And so we're never going to charge a reckless driving under this statute. I mean, I guess, what's your response to that? I disagree with that. I think the full record, well, I think the records that we submitted would demonstrate that, but the intent was to reverse the vehicle. And the injury was a byproduct, which is, again, goes to why the enumerated offense argument, when it's the byproduct, it doesn't count for the specific intent required. But that's how I read it. I see my time is- Answer as long as Judge Strauss wants to inquire. No, I'm good. Okay, good. Okay, so I will say- One sentence, go ahead. One sentence, because a person can be convicted under the statute for reckless driving. The statute cannot qualify as a crime of violence, and we ask that Schneider's sentence be vacated and remanded for resentencing. Thank you. Thank you, counsel, for the argument. Case number 17-3034 from North Dakota is submitted for decision by the court.